CASSEM, Respondent, v. APPLEGATE, et al, Appellants.

(269 N. W. 562.)

(File No. 7994.   Opinion filed November 16, 1936.)

*Roscoe Satterlee,* of Mitchell, for Appellants.
*Fred D. Shandorf,* of Mitchell, for Respondent.

CAMPBELL, J. All parties to this appeal fully concede the following facts: Plaintiff, Randall N. Cassem, is a son of O. E. Cassem, who died in 1933. For some years prior to 1931 Randall Cassem was the tenant upon a farm owned by the father in Hanson county, S. D. In 1931 Randall Cassem left this farm and defendant E. J. Applegate became the tenant of the father thereon. During the entire term of his tenancy upon the farm Randall Cassem was the owner and in possession of a certain farm wagon. When the term of his tenancy ended in 1931, Randall Cassem left this wagon upon the farm and in the possession of Applegate, who kept and used it until 1936. In 1936 Applegate sold a considerable amount of his personal property at public auction. In such sale he included the wagon left with him in 1931 by Randall Cassem. The wagon brought $61 at the auction sale, and the proceeds thereof were either retained by Applegate or perhaps paid over to Dora Cassem, who had meanwhile become administratrix of the estate of O. E. Cassem (father of plaintiff and formerly landlord, first of plaintiff, and then of Applegate), who had meantime died. Thereafter, and in March, 1936, plaintiff instituted the present action against Applegate to recover damages in the amount of $61.00 for the claimed conversion of such wagon. By stipulation Dora Cassem as administratrix of the estate of O. E. Cassem, deceased, was permitted to come into the action. She guaranteed the payment of any judgment that might be recovered against Applegate, interposed an answer, and was treated as an additional party defendant. Upon issues duly joined, the matter came on for trial to the court without a jury. In addition to the undisputed facts hereinbefore set out, the case of plaintiff, as made out by his own testimony, was substantially as follows: That when he left the farm the incoming tenant, Applegate, having no money to buy a wagon and needing one, desired to use plaintiff's wagon; that plaintiff agreed that he might use the wagon if he would take good care of it; that Applegate continued thus to use plaintiff's wagon with plaintiff's knowledge and consent until 1936, when plaintiff learned that Applegate was about to have a sale of his personal property; that thereupon plaintiff saw Applegate and asked if it would be satisfactory to sell his (plaintiff's) wagon at the Applegate sale; that Applegate said he thought it would, and suggested that plaintiff speak to the clerk of the sale

about the matter and that his wagon could then be sold at the Applegate sale and the proceeds paid to plaintiff, that plaintiff so did, and that the wagon was sold for $61.00, but that the proceeds thereof were paid to Applegate, who refused to surrender them to plaintiff. Plaintiff testified that he had never parted with title to his wagon up until the time of this auction sale and that he had never sold it or agreed to sell it either to Applegate or to his father or to anyone else. Applegate testified in behalf of the defendants that he moved on to the O. E. Cassem farm in the fall of 1931 after plaintiff left it; that, after moving on to the farm, the wagon was there and he knew or understood that it belonged to plaintiff and that he used it; that on an occasion in the fall of 1931 both plaintiff and his father were at the farm; that he stated in the presence of both of them that he (Applegate) would like to use the wagon; that thereupon plaintiff and his father stepped aside and had a conversation not heard by Applegate and then returned to his presence and O. E. Cassem told Applegate in the presence of Randall, his son, "to go ahead and use the wagon" and that was all that was said about it. Applegate further testified that in the spring of 1932, without any conversation or agreement of any kind whatsoever with Randall Cassem, he bought, or agreed to buy, certain machinery from O. E. Cassem, including the Randall Cassem wagon, at a price of $75. He testified that nothing more was done or said about the matter until he was about to have the sale of his personalty in 1936 and that shortly before such sale Randall Cassem came and talked to him about this wagon; that he thereupon told Randall Cassem that he (Applegate) had bought the wagon from O. E. Cassem and that he owned it and intended to sell it and retain the purchase price. There were received in evidence in the case three checks for $25 each, one dated April 17, 1933, one dated May 13, 1933, and one dated June 16, 1933, each signed by O. E. Cassem, each payable to plaintiff and indorsed by him, and each stamped paid by the drawee bank. The learned trial judge found the facts to be as contended by plaintiff, and conclusions and judgment were in favor of plaintiff, awarding him recovery in the amount of $61. From this judgment and from a denial of their application for new trial defendants have appealed, and challenge the sufficiency of the evidence to support the findings of the court and insist that the undisputed evidence required a

finding to the effect that decedent, O. E. Cassem, in his lifetime had paid plaintiff the sum of $75 for the wagon.

Appellants seem to rely chiefly upon the three $25 checks from O. E. Cassem to respondent in 1933, plus the fact that O. E. Cassem purported to have sold the wagon to Applegate in 1932. Respondent admitted his indorsement upon the checks, and did not question receiving the money thereon and made no attempt to explain why or for what purpose such money was paid to him by his father. Appellants therefore argue that the checks necessarily proved payment by O. E. Cassem to respondent for the wagon in question. Appellants cite 48 C. J. p. 636, reading as follows: "Bank checks of the debtor payable to the order of the creditor and indorsed by him are admissible in evidence to show payment of the debt for which they were given."

They also cite and rely upon some half dozen cases, typical of which is Masser v. Bowen (1858) 29 Pa. 128, 72 Am. Dec. 619 which reads thus:

"The plaintiff below having shown that the defendant was indebted to him, we must presume that a payment made to him by the defendant, after such debt accrued, was made on account of the debt. If it was really made on some other account, we must have some evidence of this before we can change the presumption.

"A check by the defendant to the plaintiff's order, endorsed by him and paid, is evidence that the amount of it was paid to the plaintiff on account of such debt as we know to have existed, and it cannot be excluded because the court may think it belongs to a different transaction. If the plaintiff gives evidence that it was given on another account, the jury must decide how the fact is. We think the check ought to have gone to the jury."

In every case cited by appellants the existence of the indebtedness between the parties stands utterly undisputed, and the only controversy between them is whether or not there has been payment. The defect in the position of appellants in the instant case is that they are seeking to avail themselves of the checks, not only to prove payment of a given debt, but to prove the existence of the indebtedness. If it stood admitted that respondent had sold this wagon to his father for $75, or that he had agreed and consented that his father might in his behalf sell it to Apple-

gate for $75, or that, after his father sold the wagon to Applegate for $75, he learned of that transaction and ratified it upon condition that his father should pay the money to him, it may be (though we need not and do not so decide) that the checks, unexplained, might import payment of such debt from the father to respondent. In this case, however, respondent flatly denies that he ever sold or agreed to sell the wagon to any one, denies that he ever consented that his father might sell it, and denies that he knew anything about the transaction if his father did purport to sell it. Even Applegate does not claim that respondent had any knowledge of the purported sale by the father to Applegate, and Applegate admits that so far as he knew the wagon (which he says he bought from O. E. Cassem in 1932) was the property not of O. E. Cassem, but of respondent.

We think the evidence amply supports the findings of the learned trial judge, and we are unable to perceive that the checks so much relied upon by appellants can either require or justify any other or different findings under the circumstances of this case.

The judgment and order appealed from are therefore affirmed.

All the Judges concur.